THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KWANG JUN LEE, ) | |
| ) | |
| Plaintiff, ) | Case No. 16-CV-8610 |
| ) | |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| HANJIN INTERMODAL AMERICA, INC., ) | Magistrate Judge Sidney Schenkier |
| d/b/a HANJIN EXPRESS, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Plaintiff Kwang Jun ("KJ") Lee attempts to avoid summary judgment by distorting the facts and the law in an effort to manufacture a genuine issue of material fact where none exists. Hanjin demonstrated in its Motion for Summary Judgment that KJ Lee's FLSA and IMWL claims fail, as KJ Lee has not provided any evidence that creates a reasonable inference that he performed unpaid overtime, nor has he shown that Hanjin had any constructive knowledge of his alleged unreported overtime. Faced with these fatal deficiencies, KJ Lee now provides new "evidence," including misleading, incomplete records and contradictory, self-serving testimony, which he argues creates sufficient issues of genuine material fact to avoid summary judgment. Unfortunately for him, this new "evidence" does not overcome his prior deficiencies. Accordingly, the Court should grant summary judgment to Hanjin.

**II.     KJ LEE'S RESPONSE VIOLATES LOCAL RULE 56.1**

As an initial matter, KJ Lee's Response to Defendant's Undisputed Material Facts (Dkt. No. 69) ("Pl.'s RSOF") violates Local Rule 56.1. The purpose of Rule 56.1 statements is to "assist

the court by organizing the evidence, identifying disputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000). Accordingly, the nonmovant's response should not force the Court to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Id.* at 529. Unfortunately, KJ Lee's response does just that.

First, a number of KJ Lee's purported denials or evasive non-admissions do not controvert the fact stated by Hanjin. In these instances, rather than admit or deny the stated fact, KJ Lee simply inserts an unsupported, additional fact. An example is KJ Lee's response to Paragraph No. 60. Hanjin states, in part, "KJ Lee requested and received overtime pay for hours worked over 40 in a workweek multiple times in 2013, 2014, and 2015." (Pl.'s RSOF, at ¶60). KJ Lee's response is, "Lee received overtime pay but it was much less than actual overtime pay but it was much less than actual overtime hours worked by Lee." (*Id.*) This Court has repeatedly held that "the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material asserted." *See, e.g., Camilotes v. Resurrection Health Care Corp.*, 2012 U.S. Dist. LEXIS 98567, at *4 (N.D. Ill. July 16, 2012) (quoting *Bordelon*, 233 F.3d at 528). The following paragraphs in KJ Lee's response suffer from this same defect, and, thus the statements to which they respond should be deemed admitted: Pl.'s RSOF ¶¶ 60, 63, 64, 66, and 74.

Second, several of KJ Lee's denials are unsupported by any citation to the record and thus also violate Rule 56.1. For example, in Paragraph No. 68, Hanjin states, "KJ Lee testified that after Choi allegedly advised him to underreport his overtime hours in 2014, he never again mentioned alleged unreported overtime because his 'pride was hurt.'" (Pl.'s RSOF ¶ 68). KJ Lee responds, "Disagree. Lee requested OT pay numerous times to Choi but she did not approve." (*Id.*) KJ Lee

fails to cite any evidence to support this denial. This Court has held that where a plaintiff responds to a defendant's Rule 56.1 Statement of Facts with an unsupported denial, the Court will not consider that response and the defendant's statement of fact will be deemed admitted. *See Aberman v. Bd. of Educ.*, 242 F. Supp. 3d 672, 677 (N.D. Ill. 2017) (Dow, Jr., J.) (citing *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) (striking the parties' factual assertions that lacked direct citation to easily identifiable support in the record and explaining that "Judges are not like pigs, hunting for truffles buried in [the record]." (citation and internal quotation marks omitted)). The following paragraphs in KJ Lee's response suffer from the same defect, and thus the statements to which they respond should be deemed admitted: Pl.'s RSOF ¶¶ 31, 36, 55, 67, and 68.

## III. ARGUMENT

### A. KJ Lee Cannot Demonstrate That He Worked Unreported Overtime

#### 1. KJ Lee's "Evidence" is Insufficient to Create an Inference of Unpaid Overtime.

In its opening brief, Hanjin demonstrated that KJ Lee's FLSA and IMWL claims failed because he has no evidence creating a just and reasonable inference that he performed unreported overtime work. (Def. Mem. at 4-8). In response, KJ Lee claims that, because Hanjin allegedly failed to maintain adequate records in violation of section 29 U.S.C. § 211(c), the Court should "not [] penalize" him for this failure by granting Hanjin summary judgment.[1] (Pl. Resp. at 1). Relying on *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), KJ Lee asserts that, to prove that Hanjin violated the FLSA, he need only provide enough evidence to "show the amount and extent of his work as a matter of just and reasonable inference." (Pl. Resp. at 4) (quoting

---

[1] KJ Lee devotes a significant portion of his Response to providing a tautological overview of an employer's record-keeping obligations under the FLSA. Indeed, KJ Lee regurgitates – word for word – a portion of a chapter from a practitioner's guide to the FLSA. Although this overview of record-keeping obligations under the FLSA is the only instance in which KJ Lee cites to any case law, incredibly, he does not cite to a single case *from this jurisdiction* supporting his argument. (Pl. Resp. at 3-5).

3

*Anderson*, 328 U.S. at 687-88). However, *Anderson's* burden-shifting standard only applies after a plaintiff has established liability. *Anderson*, 328 U.S. at 688. The *Anderson* standard was conceived to permit employees to recover damages under the FLSA where two criteria were satisfied: first, that the employer had not kept records (or had done so poorly), and second, that the employee had *already proven* a violation of the FLSA in the first instance. *Id.* at 687-688.

In other words, before he can rely on "just and reasonable inference" to show *how many* unpaid hours he may have worked, KJ Lee must first have already shown that he performed any uncompensated work *at all*. *Id.* In fact, the Supreme Court cautioned against applying the *Anderson* standard to cases, such as this, where the plaintiff has not established an underlying FLSA violation. *Id.* at 688 ("here we are assuming that the employee has proved that he performed work and has not been paid in accordance with the statute").

Here, contrary to KJ Lee's claims, Hanjin kept adequate payroll records, and these records reflect that Hanjin compensated him for overtime, when he reported it. (Def.'s Mat., Ex. 15, KJ Lee's Pay Records (D001227, D001231, D001253, D001270, D001272). Indeed, KJ Lee admits that during his employment he sometimes reported work over forty hours a week and received overtime compensation for those additional hours worked whenever he reported it. (Pl.'s RSOF, ¶¶ 57, 60). Nonetheless, in an effort to avoid summary judgment on his claims, KJ Lee now attempts to create genuine issues of material fact by introducing misleading, self-serving, or incomplete records that he claims support a reasonable inference that he performed unreported overtime work. (Pl. Resp. at 12).

First, KJ Lee points to I-Pass records linked to his company car. (*Id.* at 5-7). KJ Lee claims that the time stamps from three days in 2015 "satisfy the requirement that Plaintiff show that he performed unreported overtime work." (*Id.* at 7). In his view, because the I-Pass linked to his

4

company car shows that he passed tolls at 5:00 a.m. and 6:41 p.m. on March 10, 2015, 7:15 a.m. and 7:24 p.m. on November 6, 2015, and 5:51 a.m. and 6:50 p.m. on December 31, 2015, he has proven that he worked at least fifteen hours on each of these dates, and thus is entitled to overtime compensation. However, this argument is premised on a flawed understanding of the law, unsupported assumptions, and several factual contradictions.

The first, and biggest, problem with KJ Lee's reliance on I-Pass records to prove his work hours is that, up until August 2016 (shortly before he filed this suit), he drove his company car *for personal use as well*. (Pl.'s RSOF ¶ 15). Accordingly, his company car passing through any I-Pass toll station at any given time does nothing to prove that he was working at that time. And he provides no other evidence that these I-Pass tolls were incurred on work trips rather than personal ones. This evidence is thus entirely useless to prove when he was working.[2]

Even looking past that flaw, there are numerous other problems with his I-Pass analysis. First, KJ Lee himself testified at his deposition that he started work each day during this period at approximately 8:00 a.m. (Def.'s Mat., Ex. 8, Pl. Dep. at 60:8-12, 79:10-15), so his attempt to interpret these I-Pass records otherwise contradicts his own testimony. Second, even if these time stamps accurately reflect when KJ Lee passed them on his way to his first pick-up location, under the law, his compensable work hours for the day would not begin until he arrived at that first location. 29 CFR § 785.35 (time spent travelling from home to the day's first worksite is not compensable). Third, KJ Lee's estimation of his hours on these dates is based on the unsupported assumption that after passing through the toll at the end of the day, he returned to Hanjin's office for "at least two hours." (Pl. Resp. at 5). However, at his deposition, KJ Lee testified that he did

---

[2] In his RSOF, KJ Lee purports to deny the undisputed fact that he also used his company vehicle for personal use. (Pl.'s RSOF ¶ 15.) However, he supports this denial with only a citation to his affidavit – and specifically to a paragraph in his affidavit that is on an unrelated subject. (*See id.*) Accordingly, this fact should be deemed admitted.

5

not drive through any tolls on his way from Hanjin's offices to Korea Air's terminal at O'Hare International Airport, but instead passed one toll *on his way home* (Def.'s Mat., Ex. 8, 55:9-13, 58:7-18), and his commute home is not compensable work time, 29 CFR § 785.35. Thus, KJ Lee's own testimony belies his claim that he spent "at least two hours" working past the later time stamp on each of these dates.

Moreover, even assuming that these I-Pass records accurately reflect the number of hours KJ Lee actually spent working on these particular *days*, they do not demonstrate that he worked over forty hours during that *workweek*. 29 CFR § 778.103 (overtime calculations are based on hours worked over 40 in a given workweek). In fact, a review of the I-Pass records from these workweeks show that the dates above are outliers and that KJ Lee did not work in excess of forty hours during the attending workweeks.[3] Similarly, KJ Lee's contention that his trips to Champaign on two days, May 9, 2014 and August 14, 2014, necessarily demonstrate that he routinely performed unreported overtime during those workweeks, is also flawed. (Pl. Resp. at 10-11).

Beyond these failed attempts to rely on I-Pass records, KJ Lee also suggests that his personal calendars reflect the dates on which he performed overtime and thus support a reasonable inference that Hanjin failed to compensate him for overtime in violation of the FLSA. Specifically, KJ Lee claims that he used a special symbol to mark days he worked "12 to 13 hours." (Pl. Resp. at 7; Pl. Ex. 9). However, these calendars cannot defeat summary judgment. *See e.g., Brand v. Comcast Corporation*, 135 F.Supp.3d 713, 742 (N.D. Ill. 2015). "Bare allegations" and "vague undocumented estimates" do not survive summary judgment. *Id*.; *Golden v. World Sec. Agency,*

---

[3] Even using KJ Lee's suggested method of calculating the hours he worked based on his bookended I-Pass records, he worked 25.82 hours during the week of March 9 – March 13, 2015; 22.76 hours during the week of November 2 – November 6, 2015; and 34.79 hours during the week of December 28, 2015 – January 1, 2016. (Pl. Exs. 1, 3a, and 5). Also, during each of these weeks, there are days when KJ Lee only passes through one toll or does not pass through any tolls at all, thus underscoring how these I-Pass records do not accurately reflect KJ Lee's worked hours.

*Inc.*, 884 F. Supp. 2d 675, 700-01 (N.D. Ill. 2012) (granting summary judgment where employees provided spreadsheet containing numbers for overtime, but failed to provide foundational testimony to explain calculations); *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F.Supp. 2d 529, 535-35 (N.D. Ill. 2006) (finding that plaintiff's mere declaration that she worked more than forty hours per week "nearly every week" does not create genuine factual issue); *Melton v. Tippecanoe Cnty.*, 838 F.3d 814 (7th Cir. 2016) (affirming summary judgment for defendant where plaintiff's only "evidence" that he worked overtime was self-prepared spreadsheets based on his own recollection). Moreover, even by KJ Lee's telling, these notations are not a record of actual hours worked: "[t]his does not tell the hours that I work[ed], but just a reminder that I work[ed] long hours on these days." (Pl.'s Resp. at 7.) As the above cases demonstrate, occasionally writing a note to oneself that amounts to writing "I worked long hours today" is not sufficient evidence of unpaid overtime work.

Despite the copious amount of records in this case, KJ Lee can only point to six days over the course of three years which he allegedly worked longer than eight hours. And even if one accepts his flawed evidence of how many hours he worked on those six *days*, more critically, he can point to zero *workweeks* in which he worked more than forty hours and was not paid for it. In short, even if allowed to unfairly cherry-pick the record, he still cannot show that he ever worked unreported overtime for which he was not compensated. Thus, KJ Lee has failed to create a reasonable inference that he worked any unpaid, unreported overtime, and Hanjin remains entitled to summary judgment on this ground.

    2. <u>KJ Lee's Attempt to Contradict His Deposition Testimony Via an Affidavit Should Be Rejected.</u>

Following his inability to produce evidence demonstrating that he worked unreported overtime, KJ Lee attempts to create new facts that undermine the records relied upon by Hanjin in

7

its Motion for Summary Judgment. However, these facts directly contradict KJ Lee's deposition testimony and thus, the Court should disregard them.

KJ Lee originally claimed at his deposition that, following Hanjin's initial relocation in 2014, he took Irving Park Road at the end of each day to deliver packages to Korea Air's Terminal at O'Hare International Airport. (Def.'s Mat., Ex. 8, Pl. Dep. 58:7-18). However, when presented with evidence contradicting his assessments of how long it took him to drive to the airport, KJ Lee now claims that Hanjin's records are incorrect and that he spent significantly more time transporting packages from Hanjin's headquarters than he previously testified. (Pl. Resp. at 9-10; Pl. Aff. ¶ 20). Specifically, KJ Lee claims that due to road construction that lasted for three years, he was unable to take Irving Park Road – the most direct route to Korea Air's Terminal – and was forced to detour around the entire airport, tripling his driving time. (Pl. Resp. at 9-10; Pl. Aff. ¶ 20). KJ Lee now also claims that once he arrived at O'Hare International Airport he had to wait an unspecified "long period of time" before clearing security and gaining entrance to the airport.

The problem with these eleventh-hour embellishments is that they cannot be reconciled with his deposition testimony. At his deposition, KJ Lee testified that he took Irving Park Road from Hanjin's headquarters to Korea Air's Terminal at O'Hare International Airport. (Def.'s Mat., Ex. 8, Pl. Dep. 58:7-18). His new claim that the road was closed contradicts his previous testimony, and further, the IDOT records he provides, while indicating that Irving Park Road was closed at some point, give no indication of how long it remained closed. (*Id.*; Pl. Exs. 14 & 15). There is also nothing in the record that supports KJ Lee's new claim that he had to wait a "long period of time" in security upon arriving at the airport. It is well-settled that a plaintiff cannot create an issue of material fact to defeat summary judgment merely by manufacturing a conflict in his own testimony, by submitting an affidavit that contradicts an earlier deposition. *See Sirvidas*

*v. Commonwealth Edison Co.*, 60 F.3d 375, 379 (7th Cir. 1995); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995). "Parties cannot thwart the purposes of Rule 56 by creating issues of fact through affidavits that contradict their own depositions." *Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1104 (7th Cir. 1985). Thus, when a conflict arises between a plaintiff's own sworn deposition and his sworn affidavit, the deposition testimony overrides statements made in the affidavit.

Accordingly, the Court should disregard KJ Lee's new story that he had to take a previously undisclosed detour that tripled his commute time between Hanjin's headquarters and Korea Air's Terminal, and that he spent "long period[s]" waiting for security clearance upon arriving; the Court should instead accept the undisputed fact that it took him approximately 15 minutes to drive to the airport from Hanjin's headquarters in 2014. Otherwise, "the very purpose of the summary judgment motion – to weed out unfounded claims, specious denials, and sham defenses – would be severely undercut." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985).

### B. Hanjin Did Not Know KJ Lee was Performing Unreported Overtime.

In its opening memorandum, Hanjin explained that, even if KJ Lee had evidence that he performed uncompensated overtime work, his claims would still fail because he cannot show that his supervisor, Kevin Lee, was aware that he was working overtime hours in addition to those he reported and received compensation for. (Def. Memo. 8-10). In his response, KJ Lee admits that he never informed Kevin Lee that he was working uncompensated overtime, but claims that Hanjin nonetheless had constructive knowledge that he worked unreported overtime because Ha Rim Choi, whom he now claims was his "immediate superior," knew of and "ignored" his overtime submissions. (Pl. Resp. at 8-9; Pl.'s Aff. ¶¶ 12-14). It is undisputed that KJ Lee never reported any of his alleged unpaid overtime to his supervisor, Kevin Lee. (Pl.'s RSOF ¶¶ 63-66. 93). And KJ

Lee's new contention that Choi, not Kevin Lee, was his supervisor contradicts his former pleadings. In his Complaint, KJ Lee states that Kevin Lee "managed, supervised, established and administered the terms and conditions of Plaintiff's employment." (Compl. at ¶ 21). Indeed, KJ Lee does not even mention Choi in his Complaint. He now wishes to rely on a single letter written by an HR representative that refers to Choi as his "supervisor" – but even after that letter was written on October 4, 2016 (Pl. Ex. 10, D000725-726), he later filed a motion for leave to amend his complaint, with a proposed Amended Complaint attached, in which he *again* described Kevin Lee as his supervisor. (Dkt. No. 41). There, he claimed that Kevin Lee not only "managed, supervised, established and administered the terms and conditions of [his] employment," but also "was in charge of paying employees" and "told [him] where to work and when to work," among other things. (Dkt. No. 41, Proposed Amend. Compl. ¶¶ 21, 27, 28). He cannot now claim that Choi was really his supervisor, via an eleventh-hour affidavit, when he and his counsel have previously stated (under the strictures of Fed. R. Civ. P. 11) that Kevin Lee was his supervisor and "in charge of paying" him.

Moreover, even assuming that Choi was KJ Lee's direct supervisor — which she was not — KJ Lee admits that after discussing unreported overtime with Choi in 2014, KJ Lee never told anyone of his alleged unpaid work, and no one at Hanjin, including Choi or Kevin Lee, knew of it. (Pl. RSOF ¶¶ 63-66, 68).[4] For at least two years, KJ Lee did not inform anyone at Hanjin that he was allegedly performing unreported overtime hours without compensation. (*Id.* at ¶ 68). In doing so, KJ Lee failed to put Hanjin on notice, thus depriving it of the opportunity to comply with the FLSA and IMWL. *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 178 (7th Cir. 2011) ("By

---

[4] In each of the cited paragraphs, KJ Lee either admits the statement of fact or purports to dispute it but provides no citation to the record to support a dispute; thus, all are admitted. *See Aberman*, 242 F. Supp. 3d at 677.

10

failing to record their hours accurately and failing to tell their supervisors or managers about the [unpaid, off-duty work], plaintiffs prevented defendants from having actual knowledge of their off the clock work.") The Court should grant summary judgment because the FLSA does not extend liability to employers who lacked actual or constructive knowledge of the alleged violations. *Id.* at 169.

## IV.     CONCLUSION

Every one of KJ Lee's attempts to avoid summary judgment is based on incomplete or misleading records, mischaracterizations of the record, unsupported assumptions, or contradictory, self-serving testimony. Accordingly, the Court should grant summary judgment to Hanjin.

Dated: June 3, 2019              **HANJIN INTERMODAL AMERICA, INC.,**
                                 **d/b/a HANJIN EXPRESS**


                                 By:   /s/ Neil H. Dishman

                                       One of Its Attorneys


Neil H. Dishman
Brenna R. McLean
Jackson Lewis P.C.
150 N. Michigan Ave., Suite 2500
Chicago, IL 60601
T: (312) 787-4949
Neil.dishman@jacksonlewis.com
Brenna.mclean@jacksonlewis.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on June 3, 2019, he caused a true and correct copy of the foregoing ***Defendant's Reply Memorandum of Law in Support of Its Motion for Summary Judgment*** to be filed with the Court by electronic filing protocols, and that same will be electronically served upon all attorneys of record registered with the Court's ECF/CM system, including:

Ryan J. Kim
Inseed Law P.C.
2454 E. Dempster Street, Suite 301
Des Plaines, IL 60016

By: /s/ Neil H. Dishman